GEORGE C. PALMER, HENRY HORNBOSTEL and SAMUEL
E. PLONSKY, Partners Doing Business under the
Name of PALMER & HORNBOSTEL, Claimants, *v.* THE
STATE OF NEW YORK.

## Claim No. 14493.

(State of New York, Court of Claims, April, 1919.)

Jurisdiction — claim dismissed for failure to file in time — Laws of
1911, chap. 901 — Laws of 1912, chap. 521 — State Finance Law,
§ 4 — Code Civ. Pro. § 264.

A claim of the architects who designed and supervised the
construction of the State Education Building, for professional
services rendered under a contract with the commissioner of
education in regard to special furniture and special lighting
features and fixtures for the rooms and offices thereof, and
who until the completion of the installation of both, repre-
sented the department of education, considered, and *held*, that
claimants, having failed within six months from the time of
the presentation of their bill to the commissioner of education
to file a notice of intention to file a claim, the claim itself,
which was not filed until more than two years after its accrual
and presentation for payment, will be dismissed on the ground
that the court has not jurisdiction.

The effect of Laws of 1911, chap. 901; Laws of 1912, chap.
521; State Finance Law, § 4, and Code of Civil Procedure,
§ 264, as applied to the claim herein, discussed.

CLAIM for rendition of professional services and
disbursements under a contract with the commissioner
of education.

Douglas, Armitage & McCann, for claimants.

Edward M. Brown, deputy attorney-general, for
state of New York.

SMITH, J.  This claim is for $1,931.64, the amount claimed to be due from the state for professional services and disbursements of claimants, pursuant to the terms of a contract entered into by and between claimants and the commissioner of education of the state of New York.

The claim was filed with this court on June 17, 1916.  A notice of intention to file the claim was filed with the clerk of this court and with the attorney-general on June 9, 1916.

The undisputed facts are as follows:

Claimants were the architects who designed the plans and supervised the construction of the State Education Building.  As the construction of the building neared completion the matter of its suitable furnishing and the special lighting features to be provided for its reading rooms became a matter of concern to the commissioner of education, and frequent conversations with reference to these problems were had between the commissioner of education and the claimants, upon whom no obligation with respect thereto rested, but who having designed the building felt a personal interest in its appropriate furnishing to the end that the effect of their artistic work might not be marred by unsuitable and inappropriate furnishings.

As a result of these conversations it was agreed that there were certain rooms in the building which could not be suitably furnished with furniture of stock design but which should have furniture specially designed and of a style harmonious with the rooms.  For example, the regents' room in which the state board of regents held their meetings was a very elegant room, was stone lined and required handsome furniture.  Also, it was agreed that the large reading room required special study and treatment as to its lighting features, it being the desire of the commis-

Court of Claims, April, 1919. [Vol. 106.

sioner of education to have the lighting of the reading rooms in the library the very best in the country. Likewise, there were other parts of the building which in the judgment of the commissioner and of the architects required special treatment with respect to furniture and lighting.

Thereafter, the legislature, at its 1911 session, enacted chapter 901 of the laws of that year, whereby among other things it was provided as follows: " The Commissioner of Education is hereby authorized to enter into contracts for an amount not to exceed in the aggregate the sum of Two Hundred Thousand Dollars ($200,000) for such furniture and office fixtures as may be necessary for the State Education Building and the rooms and offices thereof."

After the enactment of the statute above quoted the commissioner of education, feeling that he needed expert advice as to the special features of furnishings and fixtures above referred to, and assuming that the statute above quoted conferred upon him authority to employ claimants to furnish such expert advice, entered into a contract with claimants whereby it was agreed that claimants should make or procure to be made designs and models for the special furniture and should make investigations and designs and plans with regard to the special lighting features and supervise and superintend the construction, purchase and installation of the furniture and the installation of the special lighting features, receiving for their compensation an amount equal to the actual cost to them of the service so rendered plus six per cent of such total cost.

Thereafter claimants proceeded with the work of preparing the drawings for the manufacture of the furniture, employing such assistants as were necessary, who were paid by claimants, superintended the letting of the contracts for the manufacture of the

furniture which was purchased under competitive bidding according to the terms of written contracts and specifications prepared by claimants, and in short represented the department of education generally with respect to the matter until the furniture and lighting fixtures and features were duly installed and the entire work completed.

The actual cost to claimants was $1,822.31, which sum claimants actually disbursed in this work out of their own funds.

On or about April 25, 1913, claimants presented to the education department a statement of its account for the moneys so disbursed together with an item of $109.33, being six per cent on the amount so disbursed, asking payment from the state on account of its services as aforesaid of $1,931.64.

In the meantime the legislature, at its 1912 session, had enacted chapter 521 of the laws of that year, which provided among other things as follows: " The sum of two hundred thousand dollars ($200,000), or so much thereof as may be necessary, is hereby appropriated out of any money in the state treasury not otherwise appropriated, for the purpose of *purchasing* such furniture and office fixtures as may be necessary for the state education building and the rooms and offices thereof, for which the commissioner of education was authorized to enter into contracts by section 2 of the said chapter nine hundred and one of the laws of nineteen hundred and eleven."

It seems that by the time claimants had presented their bill to the commissioner of education for his approval that officer had reached the conclusion that it could not be paid out of the appropriation of 1912 because he was advised and concluded that that appropriation was limited by its language to the payment of the *purchase* price of the furniture and fixtures and that no part of it could be used in the payment of this

bill for services and disbursements incidental to such purchase. The commissioner therefore did not certify the bill to the comptroller for audit and payment but died shortly after the presentation of the bill without having taken any action with respect thereto.

After the death of Commissioner Draper discussions followed between claimants and representatives of the education department as to the practical way of getting this bill paid and the suggestion of procuring an appropriation from the legislature was made by a representative of the department but nothing resulted until at a conference between one of claimants and Dr. Wiley, then chief of the administration division of the education department, a few days after April, 1916, it was stated by Dr. Wiley, substantially, that though this was a just bill and should be paid the matter had gone so long that there seemed no other way it could be settled except through the Court of Claims. Thereafter, on June 9, 1916, a notice of intention to file this claim was filed with the attorney-general and with the clerk of this court, and on June 17, 1916, the claim itself was filed.

That this claim is a just and equitable one is abundantly established by the evidence, but it is contended by the learned attorney-general that this court has no jurisdiction to direct its payment for the reason that the bill or claim has not been presented to the comptroller for audit and payment and by that officer rejected.

Section 264 of the Code of Civil Procedure, which defines the jurisdiction of this court, provides in part as follows: " But the court has no jurisdiction of a claim submitted by law to any other tribunal or officer for audit or determination except where the claim is founded upon express contract and such claim, or some part thereof, has been rejected by such tribunal or officer."

The State Finance Law, section 4, provides in part as follows:

" Section 4. Duties of comptroller. The comptroller shall   *   *   *

" 4. Examine, audit and liquidate the claims of all persons against the state, if payment thereof out of the treasury is provided for by law.

" 5. Draw warrants on the treasury for the payment of the moneys directed by law to be paid out of the treasury, but no such warrant shall be drawn unless authorized by law, and every such warrant shall refer to the law under which it is drawn."

Clearly, this claim is founded upon an express contract, and if payment thereof out of the treasury is provided by law this court has no jurisdiction of it because it has not been presented to the comptroller for audit and determination and by him rejected.

However, claimants contend that payment of this claim out of the treasury is not provided by law because they contend that the language of chapter 521 of the Laws of 1912 limits the use of the money thereby appropriated to the payment of the purchase price of the furniture and fixtures and makes no part ·of such moneys. available for the payment of this claim which is for services and disbursements performed and incurred as incidents to the purchase of the furniture and fixtures.

I think this is a too narrow construction to be given to the language of the act of 1912. If claimants have a valid claim against the state, it is because, and only because, the commissioner of education was authorized by chapter 901 of the Laws of 1911 to enter into the contract of employment pursuant to which they rendered the services and made the disbursements upon which their claim is founded. If the act of 1911 did not confer upon the commissioner of education authority to employ claimants then, of course, claim-

ants have not a valid claim against the state and this claim should be dismissed upon its merits. If the act of 1911 conferred such authority, then I think it is quite clear that it was the intention of the legislature by the enactment of chapter 521 of the Laws of 1912 to provide funds for the payment of all indebtedness incurred by the commissioner of education by virtue of the authority conferred upon him by the act of 1911. The act of 1911 does not limit the authority of the commissioner to the purchase of furniture and fixtures but authorizes that officer " to enter into contracts for an amount not to exceed in the aggregate the sum of two hundred thousand dollars ($200,000) for such furniture and office fixtures as may be necessary for the state education building and the rooms and offices thereof," while the act of 1912 appropriates the sum of $200,000, or so much thereof as may be necessary, " for the purpose of purchasing such furniture and office fixtures as may be necessary for the state education building and the rooms and offices thereof, *for which the commissioner of education was authorized to enter into contracts by section two of the said chapter nine hundred and one of the laws of nineteen hundred and eleven."* I think it is not a forced but a reasonable construction of these two statutes to hold that it was intended by the legislature by the former to take such steps and incur such indebtedness as was reasonably necessary and appropriate under the circumstances to provide the Education Building with appropriate and suitable furniture, furnishings and lighting fixtures at an expense not to exceed $200,000, and by the latter to make funds available for the payment of such indebtedness as had been or might be incurred by the commissioner of education by virtue of the authority conferred by the former.

If this is the correct construction of these statutes

this claim was one submitted by law to the state comptroller for audit and determination by virtue of section 4 of the State Finance Law, and not having been so presented and not having been rejected, this court is without jurisdiction to determine it upon its merits and should dismiss it for want of jurisdiction.

If, however, the act of 1911 conferred authority upon the commissioner of education to incur this indebtedness, and if the act of 1912 did not provide for its payment, then when in April, 1913, claimants presented their bill to the commissioner of education and it was discovered that the legislature had failed in its duty to make appropriation for its payment, a claim then arose and accrued in favor of the claimants for the amount of their bill and they could then immediately have filed with this court a claim against the state for the amount thereof. Having failed within six months from that time to file a notice of intention to file a claim and having neglected for more than two years to file the claim itself the court is without jurisdiction to make an award in their favor.

This conclusion is reached very reluctantly because it appears from the evidence and is undisputed that the dealings between the commissioner of education and the claimants were conducted in entire good faith upon both sides, that the employment of the claimants by the commissioner of education was wise and prudent if he had authority to employ them, that the services rendered by the claimants were valuable, that the bill presented by them is reasonable and more than ninety per cent thereof represents actual out of pocket money expended by the claimants for the benefit of the state.

It is claimed by the claimants that the court cannot now entertain a motion to dismiss the claim and in support of such contention refers to rule 18 of this court, which provides in substance that unless an

Surrogate's Court, Kings County, April, 1919.     [Vol. 106.

application for dismissal of a claim is made during the trial it will not be entertained by the court except on eight days' written notice to the adverse party stating the grounds therefor.

It is a sufficient answer to such contention that the state did, at the close of the claimants' case, move to dismiss the claim upon the ground, among others, that the claimants had failed to make out a case against the state. Of course, if claimants did not show facts establishing the jurisdiction of the court to make an award in their favor they failed to make out a case, because this court is one of limited jurisdiction and the burden was on the claimants to show the existence of all of the facts which conferred jurisdiction upon the court. Moreover, where from the facts laid before the court it affirmatively appears that the court has not jurisdiction it is the duty of the court without motion to decline to assume jurisdiction. It follows that the claim should be dismissed. An order to that effect may be entered.

ACKERSON, P. J., and WEBB, J., concur.

Claim dismissed.